374 P.2d 124

William R. BATTE, Claimant, Plaintiff-Appellee,

v.

STANLEY'S, a co-partnership, Employer, and The Fidelity & Casualty Company of New York, Insurer, Defendants-Appellants.

No. 7155.

Supreme Court of New Mexico.

Aug. 14, 1962.

George L. Zimmerman, Alamogordo, for appellants.

Albert J. Rivera, Alamogordo, John Anderson, Lordsburg, Smith, Kiker & Kitts, Richard E. Ransom, Albuquerque, for appellee.

MOISE, Justice.

This is an appeal by defendant-employer from a judgment finding claimant 60% disabled and entitled to compensation on this basis for not to exceed 500 weeks.

The question presented for determination under the facts is the sufficiency of the findings of the court to support the conclusion that claimant had suffered a reduction of wage earning ability to the extent of 60 per cent.

The facts found by the court disclose that claimant was 43 years old, had a 7th grade education, was qualified to do nothing except manual labor and driving of light trucks; that on April 20, 1960, he suffered an injury to his back in the course of his employment with defendant for whom he worked for some 14 years; that at the time of his injury he was earning $1.35 per hour, with time and a half for over time, and was working a 48 hour week so that his weekly wages were $70.20.

The findings of the court show that after the injury on April 20, 1960, claimant did not work until April 27 when he returned to work with defendant at the same rate of pay and continued this employment until July 15. From July 15 to July 23 he was

unemployed, and on the latter date went to work for Navajo Freight Lines at $2.45 per hour and worked until August 19, earning $221.21. He was then unemployed until September 1 when he went to work for Uptown Cleaners earning $65.00 per week, and continued in this employment until November 1, when he went to work for a trucking contractor for whom he worked until December 1, being paid on a ton-mileage basis and earning $111.21 for 3 weeks work. On December 1, he returned to work for Uptown Cleaners, where he worked until May 1, earning $60.00 per week. From May 1 and continuing to September 29, the date of the trial, he worked for Tularosa Hardware and earned $60.00 per week. During the entire period claimant lost 22 working days due to all causes.

The court made additional pertinent findings which for convenience are quoted in full, as follows:

"10. That the claimant herein, William R. Batte, is now and has been employed by the Tularosa Hardware Company at the rate of $1.25 per hour for a 48 hour week; that he entered this employment on the basis of being well acquainted with the manager-owner of this business, who had known him previously and worked previously with him at Stanley's in Alamogordo; although he knew that Mr. Batte had an injured back, he did not know the exact extent of the injury and stated that if he had known he would not have employed him, but out of special consideration he kept him on and had one of the other employees assisting in lifting heavy objects; that at the present time he will be unable to continue this employment of Mr. Batte due to the economic recession in the business; that he will be unable any longer to employ an assistant to help Mr. Batte in lifting heavy objects and that he can employ one man to do the entire job, which he is going to be forced to do.

"12. That since, but not before, the incapacitating injury, at and present, William R. Batte's back hurts him constantly. It interferes with his rest in that he is unable to sleep through the entire night and frequently has to sleep on the floor. The sharp pain from his back radiates to his lower extremities with attending stiffness and numbness. He is unable to recline in a sitting position except for brief periods of time without having great difficulty in resuming an erect position. He is unable to do anything that approaches normal lifting, and frequently drops things. He is irritable and quick tempered to his own family as well as strangers. He experiences extreme pain upon coughing. He experiences difficulty in maintain-

ing proper balance. He stumbles quite often and has limitations in ordinary walking and is unable to do manual labor consistently and continuously.

"13. That the testimony of two physicians was taken in this case, one employed by the liability carrier who fixed this man's total disability at 10 per cent, but said this was done on examination of his reactions and certain tests that he put him through and x-rays. Claimant's physician testified that he was, in his opinion, 60 per cent disabled. This was based on the fact that he performed a discogram of William R. Batte wherein he found that he had a herniated disc in the lumbar spine at the level of the fourth and fifth lumbar inner spaces, being the same area as the strain which the previous evaluation was made by the liability carrier's physician. He also stated that as far as doing any manual labor was concerned, which involved truck driving or other jobs of unskilled employment, that he thought he was probably disabled; however, that he would fix his disablement of the body as a whole at 60 per cent.

"14. The evidence established that employment opportunities for labor work in the area of Otero County was nearly nil for a prospective employee known to have two ruptured discs in his lower back area.

"15. Both the employer's medical expert and the plaintiff's medical expert established the fact that William R. Batte would not be recommended for employment requiring manual labor by either of them.

"16. That as a reasonable medical certainty, continued attempts to perform manual labor will intensify the present injury as the alignment and functioning ability of the entire spine is affected by the two injured discs.

"17. That as a reasonable medical certainty, the injury is permanent, and will become more aggravated with the passage of time.

\*    \*    \*    \*    \*    \*

"28. That on April 19, 1960, plaintiff's principal occupation was that of a delivery man, and that all of his employment subsequent to April 19, 1960, and up to and including September 29, 1961, the date of trial, the plaintiff's principal occupation was that of a delivery man.

"29. That the plaintiff voluntarily resigned his employment from Navajo Freight Lines, Inc. as a delivery truck driver; that the plaintiff voluntarily resigned his employment from Uptown Cleaners on two occasions; and that the plaintiff voluntarily resigned his employment from Harcrow Trucking

Company, all because his back hurt and he could no longer continue."

Based upon these findings, as already stated, the court concluded there was a 60% reduction in claimant's wage earning ability.

Defendant complains that in so determining, the court failed to apply the formula contained in § 59–10–18.3, N.M.S.A. 1953. As we understand the argument, it is to the effect that this statute sets up a mathematical formula and that the court is required to follow it. Defendant admits that under one method of applying the formula, claimant's earning capacity may have been reduced 14½%, under another the reduction would have been 14⅓%, and under still another it would have been 17%, and concedes that a conclusion of 17% would have been within the proof.

The sections of the statute involved are §§ 59–10–12.1(A) (C), and 59–10–18.3, N.M.S.A.1953, which read as follows:

"59–10–12.1. As used in the Workmen's Compensation Act [59–10–1 to 59–10–37]:

"A. 'Disability' means a decrease of wage earning ability due to a workman's injury suffered by accident arising out of and in the course of his employment.

\*     \*     \*     \*     \*     \*

"C. 'Partial disability' means a reduction in, but not an entire loss of, a workman's wage earning ability due to an injury suffered by accident arising out of and in the course of his employment."

"59–10–18.3. For partial disability the workmen's compensation benefits not specifically provided for in section 59–10–18.4 New Mexico Statutes Annotated, 1953 Compilation, shall be that percentage of the benefit payable for total disability, as provided in section 59–10–18.2, New Mexico Statutes Annotated, 1953 Compilation, which is derived by dividing the workman's average weekly wage before the disability into the difference between such average weekly wage before disability and the average weekly wage he earns or is able to earn after disability, in any employment, which benefits shall be payable for the duration of the workman's partial disability but in no event longer than five hundred (500) weeks."

It is apparent from reading the statutes that "disability" is defined as a "decrease of wage earning ability" and "partial disability" is a "reduction in, but not an entire loss of a workman's wage earning ability." The formula in § 59–10–18.3, N.M.S.A. 1953, provides that the compensation benefits where a workman is partially disabled is arrived at by "dividing the workman's average weekly wage before the disability ($70.20 in the instant case) into the difference between such average weekly wage

before disability ($70.20) and the average weekly wage he earns or is able to earn after disability, in any employment * * *." It is this last figure that causes the difficulty. Employer would have us hold that the "average weekly wage he earns or is able to earn" is to be determined from consideration of the various amounts earned in the several employments in which claimant was engaged after his injury, thus stressing the words "average weekly wage he earns" and giving little regard to the words "or is able to earn."

On the other hand, claimant would reverse the emphasis and he points out his lack of schooling and lack of training to do anything but manual labor, and the pain and other troubles suffered by him as found by the court. He also points out that although he has been employed at $60.00 per week by Tularosa Hardware Company, this has been by virtue of his acquaintance with the manager-owner of the business. Because of his inability to lift, a helper has done this work, but that the business will not justify continuance of two men doing what one man should be able to do, and presumably claimant is to be laid off.

■ We do not believe that either contention is proper. The statute must be construed in its entirety, and the words "he earns or is able to earn" should be considered together to arrive at "wage earning ability."

Although the formula in § 59–10–18.3 is new in our law, similar formulae requiring comparison between earnings at the time of injury and earning ability after injury have been present in many workmen's compensation laws, in various forms, for many years. See §§ 57.00, 57.10, Larson's Workmen's Compensation Law.

It is almost universally held under statutes comparable to ours, that earning as much or more after injury as before is not conclusive that a workman's earning ability is not impaired. See Larson, Workmen's Compensation Law, § 57.20; 149 A.L.R. 413, 415. Accordingly, we have no hesitancy in announcing that under § 59–10–18.3 the wages earned after injury are not necessarily determinative of the question of post injury earning ability. Winter v. Roberson Construction Co., N.M., 372 P.2d 381, filed June 7, 1962, is the first case decided by us in which § 59–10–18.3, N.M. S.A.1953, is discussed. However, that case involved a situation where although claimant worked some 3½ months after injury at his old job with no reduction in pay, his earnings thereafter during the next 6 months were reduced at least 25%. We held that there was substantial evidence to support the finding of 25% partial permanent disability and recognized that the amount of wages earned in a given period was not conclusive of wage earning ability.

The instant case differs from Winters in that here the reduced earnings were in the

neighborhood of 17%, whereas the court allowed 60% partial permanent disability. The question then is, do the findings as made by the court support such a conclusion?

Finding No. 13 referred to the testimony of claimant's physician to the effect that claimant was "probably disabled" from doing any manual labor, and fixed his disablement of the body as a whole at 60%. While, it would have been more proper if the court had made the findings as fact rather than as statements by the doctors, it is nevertheless clear that finding No. 13 is the basis for the conclusion that plaintiff suffered a 60% reduction of wage earning ability. In the light of our oft repeated rule that where findings are uncertain, doubtful or ambiguous, we should indulge all presumptions in favor of the correctness of the judgment, Sandoval v. Unknown Heirs of Vigil, 25 N.M. 536, 185 P. 282; Guaranty Banking Corporation v. Western Ice & Bottling Co., 28 N.M. 19, 205 P. 728; Hay v. New Mexico Highway Department, 66 N.M. 145, 343 P.2d 845, we have no difficulty in deducing that a finding of 60% reduction in earning capacity was intended by the court, and that the finding as made is based upon substantial evidence and is sufficient to withstand the attack made upon it. Perini v. Perini, 64 N.M. 79, 324 P.2d 779; Ashley v. Fearn, 64 N.M. 51, 323 P.2d 1093.

Specifically, on the question of whether there must be a finding of fact to support a conclusion that "earning ability" was different from "earnings" and that it was error requiring reversal to fail to make such a finding, we would point to the case of California Compensation Insurance Company v. Industrial Accident Commission of the State of California, 128 Cal.App. 2d 797, 276 P.2d 148, and on rehearing, 277 P.2d 442, which so held. To the same effect is Lumber Mutual Casualty Insurance Co. v. O'Keeffe, 2 Cir., 217 F.2d 720, in which the head note reads:

"In proceedings for compensation under Longshoremen's and Harbor Worker's Act, a finding that claimant's actual earnings after injury did not fairly and reasonably represent his post-injury earning capacity was a prerequisite to an award based on the factors enumerated in provision for establishing a claimant's wage-earning capacity in such cases."

See, also, Matlock v. Industrial Commission, 70 Ariz. 25, 215 P.2d 612; Fischer v. John W. Thomson & Son (Fla.1957), 92 So.2d 526.

In the instant case it is also clear that if plaintiff could not do any manual labor when he was qualified for nothing else, he could not earn and his earning ability was necessarily reduced. We want it understood that we recognize the rule

that a finding of reduction in earning capacity does not follow from a finding of impairment of body function. Ball v. Mann (Fla.1954), 75 So.2d 758; Horace Z. Brunson Plumbing & Heating Company v. Mellander (Fla.1961), 130 So.2d 273; Shaffer v. Midland Empire Packing Co., 127 Mont. 211, 259 P.2d 340; J. A. Foust Coal Co. v. Messer, 195 Va. 762, 80 S.E.2d 533. See, Larson, Workmen's Compensation Law, § 57.10. That situation is not here present. As already stated, the doctor testified and the court found that plaintiff could not work, and this would support a conclusion of 100% reduction in earning ability. However, this was lowered to 60%, and there is no complaint about the court's action in doing so. The finding includes decrease of earning ability or capacity and is not limited to impairment of body function.

Claimant requests an attorney fee for services of his attorneys in this court. A fee of $750.00 is hereby fixed.

No reversible error being present, the cause is affirmed, and an attorney fee of $750.00 allowed to claimant.

IT IS SO ORDERED.

COMPTON, C. J., and CARMODY, J., concur.

CHAVEZ and NOBLE, JJ., not participating.