376 P.2d 574

Clifford A. THOMPSON, Claimant,
Plaintiff-Appellant,

v.

The BANES COMPANY, Inc., Employer, and
the Employers Fire Insurance Company,
Insurer, Defendants-Appellees.

No. 7086.

Supreme Court of New Mexico.

Oct. 23, 1962.

Rehearing Denied Dec. 17, 1962.

Harris & Cathey, Roswell, for appellant.

James T. Jennings, Roger L. Copple, Roswell, for appellees.

EDWIN L. SWOPE, District Judge.

Claimant, Clifford A. Thompson, brought this action for Workmen's Compensation benefits against employer, The Banes Company, Inc., and its insurer, The Employers Fire Insurance Company, and appeals from an adverse decision. Claimant now suffers from a heart condition which has totally disabled him. He has had a rheumatic heart condition for a number of years which, in recent years, has evidenced itself in the form of a natural organic heart disease known as aortic stenosis. During World War II he was rejected by the Army because of this heart condition and cautioned by the Army doctors against doing strenuous work. In 1957, he had trouble with his heart while working, received medical treatment, and was warned by his doctor to limit his activities. Thereafter, in January 1960, he again had trouble with his heart while working and was advised by another doctor to quit this job because it involved lifting heavy tanks and warned not to lift heavy objects in the future because of his heart condition.

In June 1960, claimant commenced working for employer, The Banes Company, and on November 8, 1960, while engaged in the construction of an airport hangar for the employer, he and two other employees were putting up the roof beams and girts of the hangar. On the second or third roof beam he cranked the winch to raise the beam and then climbed up the beam to put it in place. When claimant came off the building he looked pale and complained to his foreman that he did not feel well and had a pain in his chest. After discussing the matter with his foreman, it was agreed that claimant would remain on the job but would work only on the ground. He continued to feel weak and dizzy and to have pain the rest of the day, which condition continued after he went home. That evening, at claimant's request, the foreman brought him some whiskey to relieve his pain and the following day he stayed in bed. The next day, when claimant contacted the foreman with regard to returning to work, he was urged by the foreman to see a doctor, which he did that day. Thereafter, he received medical treatment, including hospitalization, and, upon the advice of his doctor, has not returned to work since.

Claimant contends that on November 8, 1960, he suffered an accidental injury to his heart, known as a myocardial infarction, which arose out of his employment

The trial court found that claimant did not suffer a myocardial infarction on November 8, 1960, that the symptoms which claimant evidenced on November 8, 1960, were not reasonably incident to his employment but were the natural symptoms due entirely to the ordinary development of his

previous heart condition, and that his present disability is not the natural and direct result of an accident arising out of and in the course of his employment with the employer, but it is solely attributable to the ordinary development and progression of his pre-existing heart condition. For these reasons, the court concluded that claimant was not entitled to benefits under the Workmen's Compensation Act. Claimant contends that the findings and conclusions of the court are not supported by substantial evidence. An examination of the record reveals that four medical experts testified at the hearing, three in person and one, who resides in Michigan, by deposition.

All of the doctors agree that claimant has had a rheumatic heart with aortic stenosis for a number of years. Aortic stenosis was described as a narrowing of the aortic valve, the main outflow track of the heart, which narrowing is a gradual process attributable in this case to rheumatic fever. As the valve narrows the heart must pump faster, becomes enlarged and itself requires more blood. This condition can eventually result in serious difficulties, such as chest pain, fainting spells and disability.

One of the doctors testified that as a result of examining claimant in June 1961, considering the history related by him, studying his hospital records and examining his electrocardiograms taken at various times, it was the doctor's opinion that claimant did not suffer a myocardial infarction while working on November 8, 1960, but that his present condition is the result of the natural progression of his pre-existing heart condition. Two of the other doctors disagreed with this opinion and stated that in their opinions claimant did suffer a myocardial infarction on November 8, which was caused by his previous heart condition and engaging in strenuous work. All three doctors were examined at length concerning the reasons for their opinions. The fourth doctor testified that he had first treated claimant in August 1957, when he lived in Michigan, at which time claimant told him he had been sent home from work thirty-six hours previously because his "heart was kicking up," and continued to treat him from August, 1957, until February, 1959, for his heart condition and other ailments. He stated that claimant was suffering from inactive rheumatic heart disease at that time and had aortic stenosis.

Bearing in mind that conflicts in the evidence must be resolved in favor of the trial court's findings and conclusions, Luna v. Flores, 64 N.M. 312, 328 P.2d 82, and, after considering the testimony of the medical experts and of the other witnesses, it is our opinion that the findings and conclusions are supported by substantial evidence.

The other question to be considered is claimant's assertion that he was prej-

udiced by the action of the trial court in admitting into evidence the deposition of the doctor in Michigan. At the time the deposition was taken the employer arranged for a court reporter and attorney to be present. The record shows that pursuant to Rule 31, Rules of Civil Procedure, certain written interrogatories were submitted by the employer to the doctor, but that at the time they were answered several additional oral sub-questions were asked by the reporter. Apparently, the purpose of the sub-questions was to obtain complete answers to some of the main questions. At the conclusion of the questioning the attorney representing the employer informed the doctor that, after his answers had been transcribed by the reporter and before they were forwarded to the court, he had a right to review them but could waive this right. This remark by the attorney was in no way prejudicial to claimant. Conceding that it was improper for the reporter to ask the sub-questions without prior notice to claimant, thereby giving him an opportunity to cross-examine, the record shows that the trial court stated at the hearing that only the answers which were pertinent to the written interrogatories would be considered by him and since his findings and conclusions are supported by substantial evidence other than the answers to the sub-questions, it is our opinion that claimant has in no way been prejudiced in the matter.

See Newbold v. Florance, 56 N.M. 284, 243 P.2d 597.

■ Claimant having lost the case here and below, his attorneys are not entitled to the allowance of a fee from the employer. Pate v. Makin Drilling Company, 66 N.M. 402, 349 P.2d 121.

Finding no error, the judgment of the district court is affirmed.

IT IS SO ORDERED.

COMPTON, C. J., and CARMODY, J., concur.