376 P.2d 963

Francisco LOZANO, Plaintiff-Appellee,

v.

B. F. ARCHER, d/b/a Archer Company of Hatch, New Mexico, Employer; and Commercial Insurance Company of Newark, New Jersey, also known as Firemen's Insurance Co. of Newark, New Jersey of the America Fore Loyalty Group, Insurer, Defendants-Appellants.

No. 7131.

Supreme Court of New Mexico.

Dec. 4, 1962.

W. C. Whatley and R. E. Riordan, Las Cruces, for appellants.

Edward E. Triviz, Las Cruces, John A. Anderson, Lordsburg, for appellee.

COMPTON, Chief Justice.

This is an appeal from a judgment of the District Court of Dona Ana County awarding workmen's compensation benefits to Francisco Lozano for total permanent disability.

The appeal is based on two points. Point I asserts that the claim for compensation was barred for failure of the claimant to give timely written notice of the accident and injuries as required by Section 59–10–13.4, New Mexico Statutes Annotated; and Point II challenges the sufficiency of the evidence to sustain the findings of the court that the claimant as a result of the accidental injuries sustained had become and was unable to obtain and retain gainful employment, and had thus sustained entire loss of wage earning ability.

The undisputed facts as found by the court are that Lozano, 47 years old at the time of trial, was born in Jiminez, Chihuahua, Mexico. He came to this country in 1924, received his high school education at Hatch, New Mexico, where he has resided most of his life. He is married and has three minor children. From 1939 to 1942 he worked for Myers Company, a general merchandise and later farm implement store, in Hatch. Upon his return from military service in 1945, where he trained and served as an aircraft mechanic in the air force, he was re-employed by Myers Company, leaving it in 1946 to work for appellant, B. F. Archer Company of Hatch. This company is engaged in the sale, delivery and servicing of farm implements and equipment. Claimant worked continuously in this employment for 14 years or until about December 15, 1960, as a salesman, shop foreman, mechanic and overall general employee and was in charge of the implement department. His duties consisted of the handling, moving, lifting, pushing, arranging, repairing, installing and servicing, by himself and with others, of various kinds of heavy farming equipment and parts. The major part of his work involved physical exertion.

In 1948 the claimant sustained an injury to his back in the course of this employment for which he received no compensation but which necessitated the periodic wearing of a back brace. However, he continued to do everything he had previously done up until May, 1960.

About May 16, 1960, while helping two other employees move a piece of equipment weighing about 300 pounds, claimant either stumbled, tripped or his legs gave way causing him to drop his end of the equipment at which time he experienced pain in his back. The accident was immediately reported to Mrs. Archer, who served as office manager, and she sent claimant to a doctor in Hatch for examination and treatment. Thereafter on account of the back pain claimant restricted his physical activities at work but was paid the same wages of $100.00 per week plus a certain percentage of net proceeds at the end of the year. About August 18, 1960, a customer dropped a coil of wire weighing about 95 pounds on claimant's foot. This accident was reported to Mrs. Archer the same day and she called Dr. A. D. Maddox of Las Cruces requesting that he check the claimant's back as well as his foot, which was done. On the following day claimant returned to work on crutches which he used for a short period, but his ability to engage in any physical exertion progressively deteriorated until he was obliged because of pain and suffer-

ing to terminate his employment with appellant company about December 15, 1960.

Shortly after terminating his employment with the Archer Company claimant and his wife purchased a small grocery store at Hatch, which contains their living quarters. The wife runs the store with the assistance of a hired boy on Saturdays and of the claimant who keeps the accounts and does other things involving only light physical activity. In this work, he is able to regulate his time and activity and rest when necessary. The record indicates that claimant and his wife are doing little more than making a living for the family.

Mr. Archer, the employer, testified that while the majority of claimant's activities in his employment involved the physical exertion of lifting, pushing, standing, stooping and bending, after the accident of May 16, 1960, he became aware that claimant was in pain and could not do the same work he had been doing; that he told claimant to take it easy and kept him on to some extent out of special consideration in view of his long period of service with the company. Mr. Archer further testified that in each case he was told about both of the accidents on his return to the office, that he advised the claimant to pursue his claim for compensation and tried to assist him in that regard.

■ We find no merit in appellants' first contention that the claim for compensation

is barred for failure to give notice in writing. Since there is no attack on the lower court's finding as to the timely verbal reporting of both accidents to Mrs. Archer, the office manager, and her referral of claimant to doctors for treatment, it is apparent that appellant's position is that the only knowledge which will relieve from the necessity of written notice is an injury which occurs in the presence of an employer or his agent. In this the appellants are in error. The verbal reporting of an injury by accident arising out of and in the course of employment to the employer, or to his manager, in the circumstances here present, satisfies the requirement of "actual knowledge." Buffington v. Continental Casualty Company, 69 N.M. 365, 367 P.2d 539; Winter v. Roberson Construction Company, 70 N.M. 187, 372 P.2d 381, and 2 Larson's Workmen's Compensation Law, §§ 78.00, 78.31.

The reason for 30-day notice to an employer of an accident or injury sustained by an employee is to enable the employer to examine into the facts while they are accessible and also to employ skilled physicians or surgeons to care for the employee so as to speed his recovery and protect himself against simulated or exaggerated claims. Copeland v. Black, 65 N.M. 214, 334 P.2d 1116. In this case, we have the additional fact of the acknowledgment by the employer of notice of claimant's injuries.

With respect to Point II, appellants challenge the sufficiency of the evidence to support the following finding of fact:

"VI

"(a) From either or both of such accidents of May 16, 1960 and August 18, 1960, sustained while in the course of his employment with the defendant, B. F. Archer, d/b/a Archer Company, Hatch, New Mexico, the claimant, taking into consideration his age, education, training, general physical and mental capacity and adaptability, is unable by reason of such injury or injuries to his back to obtain and retain gainful employment, or has thereby sustained entire loss of his wage earning ability."

The medical testimony, which was not disputed, can best be set forth by way of the court's finding thereon:

"IV

"(a) According to the medical expert, Dr. Daniel Maddox of Las Cruces, the plaintiff sustained total and permanent disability for manual labor or physical exertion requiring lifting, pushing and handling of equipment incident to his employment as a proximate result of either or both of the injuries or accidents of May 16, 1960 and/or August 18, 1960 and also rendered the opinion that the accident involving the foot on August 18, 1960 could have ag-

gravated any pre-existing condition or discogenic disease to the claimant's back and that the plaintiff was no longer able to do much of anything.

"(b) Another medical expert, Dr. Wendell C. Peterson of Albuquerque, New Mexico, who performed a discogram on the plaintiff, rendered an opinion that claimant's present condition is attributable to injury to the 4th interspace and aggravation of any pre-existing condition or combination thereof."

The substance of appellants' position is that claimant could not be totally disabled in view of the testimony that he is capable of light work and, because of his knowledge, education and experience as a salesman, he is capable of serving in a supervisory capacity. They point out that claimant voluntarily left his job when appellant-employer would have retained his services in a supervisory capacity, and that he now assists his wife in running a small grocery store by keeping the books and otherwise advising her.

Section 59–10–12.1, subd. B, N.M.S.A. 1953 Comp., of our present workmen's compensation law defines "total disability" as an entire loss of a workman's wage earning ability due to an injury suffered by accident arising out of and in the course of his employment. Prior to the 1959 amendment of this law, total disability was not specifically defined therein, but this court held as follows:

"Total disability, within the Workmen's Compensation Act, may be said to exist when, considering the age, education, training, general physical and mental capacity and adaptability of the workman, he is unable by reason of his accidental injury to obtain and retain gainful employment."

Rhodes v. Cottle Construction Co., 68 N.M. 18, 357 P.2d 672. See also Seay v. Lea County Sand and Gravel Co., 60 N.M. 399, 292 P.2d 93; Ruiz v. Hedges, 69 N.M. 75, 364 P.2d 136 and Romero v. H. A. Lott, Inc., 70 N.M. 40, 369 P.2d 777.

██ Since compensation benefits are not based on the physical injury itself but on the disability produced by the injury, to suffer an entire loss of wage earning ability does not mean that a workman must be in a state of absolute helplessness, or unable to do work of any kind. It means the disablement of the workman to earn wages in the same kind of work, or work of a similar nature for which he is trained, or is accustomed to perform, or any other kind of work which a person of his mentality and attainments could do. Tilghman v. Mills, 169 Neb. 665, 100 N.W.2d 739; Richter v. Shoppe Plumbing & Heating Co., 257 Minn. 108, 100 N.W.2d 96.

██ Whether the question involved is one of total disability or of partial disability, under our act, the answer is to be found in the determination of what the workman

earns or is able to earn. The loss of wage earning ability is in theory a comparison of what the employee would have earned had he not been injured and what he is able to earn in his injured condition. Kendrick v. Gackle Drilling Co., N.M., 376 P.2d 176, and Batte v. Stanley's et al., 70 N.M. 364, 374 P.2d 124.

In 2 Larson's Workmen's Compensation Law, § 57.51, attention is drawn to a rule laid down in Lee v. Minneapolis Street Railway Co., 230 Minn. 315, 41 N.W.2d 433, and followed by most modern courts which states:

> "An employe who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled."

See National Fuel Co. v. Arnold, 121 Colo. 220, 214 P.2d 784, and Texas Indemnity Insurance Co. v. Bonner, Tex.Civ.App., 228 S.W.2d 348.

We think this rule applies in all respects to the claimant here and that appellants' Point II is also without merit. The evidence, both medical and otherwise, is substantial that by virtue of his injuries in May and August, 1960, aggravating a 1948 injury, claimant was totally disabled from doing the only work that he had done for many years and for which he had training and experience, and that this condition progressively deteriorated until, because of pain and suffering, he was unable to continue in this employment even in a limited capacity.

In addition to the medical testimony that claimant was not able to do much of anything and could not pursue a regular job of labor without special consideration, there was further evidence that even with successful surgery he would never be able to do heavy work, would be more vulnerable to new injury and, therefore, would constitute a hazard to any employer or carrier. That the claimant is able to assist his wife in running a small grocery store by keeping books and giving advice is not indicative of wage earning ability in a competitive market. In the recent case of Chatfield v. Industrial Accident Board, Mont., 1962, 374 P.2d 226, the Industrial Board resisted an award to claimant for total disability because, among other things, of his financial success on a dairy ranch of which he was part owner. The court said:

> " * * * it would seem that the Board correlates ability to acquire income with ability to work. Any income which the claimant has received from the ranch is a result of his capital investment and not from the sweat of his brow. The fact that claimant was able to 'boss' his own ranch does not indicate

an ability to compete on the labor market for a similar position elsewhere."

 The fact that a workman is able to do any kind of work, however trivial and unremunerating, not necessarily of the type he had formerly done and for which alone he is qualified by training, experience and educational background, does not preclude his recovery of compensation for total disability. Smith v. Spence & Son Drilling Co., 61 N.M. 431, 301 P.2d 723; Franzen v. Blakley, 155 Neb. 621, 52 N.W.2d 833. Compare Clingan v. Fairchance Lumber Co., 166 Pa.Super. 331, 71 A.2d 839.

Moreover, the willingness of the employer, through special consideration because of long service to continue to employ claimant in a capacity limited in quality, dependability or quantity, by no means reflects claimant's wage earning ability. Gildea v. State Department of Highways, 208 Minn. 185, 293 N.W. 598; Trinity Universal Ins. Co. v. Rose, Tex.Civ.App., 217 S.W.2d 425; 2 Larson's Workmen's Compensation Law, § 57.34. It appears from the employer's own testimony that it would be difficult to get employment in the Hatch area unless someone were to leave a job and even then it would be difficult to obtain employment that did not require strenuous work.

The judgment is affirmed. Attorneys' fees of $750.00 are allowed to the claimant for the services of his attorneys in representing him in this court and IT IS SO ORDERED.

CHAVEZ and MOISE, JJ., concur.

CARMODY and NOBLE, JJ., not participating.