440 P.2d 301

Santiago QUINTANA, Plaintiff-Appellant, and Cross-Appellee,

v.

TROTZ CONSTRUCTION COMPANY, Employer, and the Employers' Group Insurance Companies, Insurer, Defendants-Appellees and Cross-Appellants.

No. 8206.

Supreme Court of New Mexico.

March 4, 1968.

Rehearing Denied May 6, 1968.

Donald A. Martinez, Las Vegas, for appellant.

Montgomery, Federici & Andrews, Sumner G. Buell, Santa Fe, for appellees.

## OPINION

MOISE, Justice.

We here have presented an appeal and a cross-appeal from a workmen's compensation judgment granting claimant compensation for 20% impairment to the body as a whole.

Claimant complains that the judgment was for less than 100% disability, whereas the employer claims error because recovery was not limited to 115 weeks, being the period for which compensation is provided by the schedule for injury to one foot at the ankle. § 59–10–18.4, N.M.S.A.1953.

There is no question that claimant's left foot and ankle were injured in an accident arising out of and in the course of his employment by the employer. The only issues presented are those noted above, viz., did the court err in limiting claimant's recovery to 20% instead of 100%, and did it make a mistake in granting recovery for a longer period than 115 weeks?

We answer the second question first, and conclude that there was no error in the court's refusal to limit the recovery to the period provided by the schedule. The facts here are very similar to those present in Baker v. Shufflebarger, 78 N.M. 642, 436 P.2d 502, decided January 22, 1968. In that case and in Webb v. Hamilton, 78 N.M. 647, 436 P.2d 507, also decided January 22, 1968, we discussed the identical issue here presented concerning the application of the schedule. No useful purpose would be served by repeating what was said in those cases.

Although employer asserts that there is no competent evidence to support a finding of disability extending to the body as a whole, and that accordingly the recovery should have been limited to the period provided in the schedule, our examination of the testimony of the treating physician, Dr. Blanchard, convinces us otherwise. He testified that " * * * because of the favoring of that left foot and ankle and then that affected his left hip and buttock to the extent that he isn't any good as far as working at his regular occupation goes." There can be no question that this testimony supports the court's finding No. 5:

"That the disability resulting from the injury to the scheduled member, foot and ankle, is not confined thereto, but has resulted in additional body impairment in that, because of the injury to the foot and ankle, the Plaintiff has developed a permanent limp which in turn produces a pelvic tilt and results in pain in the left leg, left hip and the pelvic area. * * *"

Although employer argues correctly that nobody mentioned a "pelvic tilt" in the testimony, we are not concerned since the doctor's testimony noted above supports the finding of "additional body impairment" and the conclusion that recovery should not be limited by the schedule was proper under the Baker and Webb cases.

To resolve the issue raised by the claimant in his appeal, it is necessary for us to consider the law as it existed on August 8, 1963, the date of the injury. In the year 1963 the definitions of "total disability" and "partial disability" were changed by amendment from the way they appeared in 1959. Ch. 269, Sec. 1, N.M.S.L. 1963. Prior to 1959 these terms had not been defined by the legislature.

In the case of Lozano v. Archer, 71 N.M. 175, 376 P.2d 963 (1962), being the first case decided under the 1959 law, we noted the change made by that law and the effect of the change, and cited the cases

interpreting the law prior to 1959. In 1963 the definitions of these terms were again amended. Ch. 269, Sec. 1, N.M.S.L. 1963. The 1963 act, § 59–10–12.1, N.M.S.A. 1953, repealed the previous definitions and enacted new ones reading:

"59–10–12.1—As used in the Workmen's Compensation Act:

"A. 'total disability' means a condition whereby a workman, by reason of an injury arising out of, and in the course of, his employment, is wholly unable to perform the usual tasks in the work he was performing at the time of his injury, and is wholly unable to perform any work for which he is fitted by age, education, training, general physical and mental capacity, and previous work experience; and

"B. 'partial disability' means a condition whereby a workman, by reason of injury arising out of and in the course of his employment, is unable to some percentage extent to perform the usual tasks in the work he was performing at the time of his injury and is unable to some percentage extent to perform any work for which he is fitted by age, education, training, general physical and mental capacity and previous work experience."

In 1965 these definitions were relocated in the Act in different sections in their identical language. Ch. 295, Secs. 18 and 19, N.M.S.L.1965. They now appear as §§ 59–10–12.18 and 59–10–12.19, N.M.S.A. 1953. We look to the decisions under the definitions as they have existed since 1963 to arrive at our conclusion.

An examination of the statutes discloses that whereas prior to 1959 total disability was held to be present "when, considering the age, education, training, general physical and mental capacity and adaptability of the workman, he is unable by reason of his accidental injury to obtain and retain gainful employment." Rhodes v. Cottle Construction Co., 68 N.M. 18, 357 P.2d 672 (1960); after that date and until 1963, wage-earning ability was the controlling

test, Blancett v. Homestake-Sapin Partners, 73 N.M. 47, 385 P.2d 568 (1963); Lozano v. Archer, supra; Batte v. Stanley's, 70 N.M. 364, 374 P.2d 124 (1962).

Looking now to § 59–10–12.1, N.M.S.A.1953, quoted above, being the definitions applicable in the case before us, it is quite evident that the legislature adopted as the tests for total disability, (1) complete inability "to perform the usual tasks in the work he was performing at the time of his injury"; and (2) absolute inability "to perform any work for which he is fitted by age, education, training, general physical and mental capacity, and previous work experience." Without any evident purpose to in any way alter the desirable objectives of workmen's compensation insurance, the 1963 amendment of the 1959 definition changed the primary test of disability from wage-earning ability to capacity to perform work as delineated in the statute.

We are thus brought to an application of the rule to the facts of the instant case. Although not the only evidence pertinent to the inquiry, we consider controlling the following testimony of Dr. Blanchard which is in no way contradicted by anything else appearing in the record:

"Q And what is your opinion, Doctor, as to whether or not Mr. Quintana would be able to do heavy labor or construction work, with this condition that he has?

A I do not think that he will be able to do construction work or heavy manual labor, which includes walking considerable distances and so forth. He still has some limitation of motion in the left foot and ankle. And he has favored that left foot and ankle. Naturally, anybody would.

\* \* \* \* \* \*

Q Doctor, do you have an opinion as to whether or not this man's condition is permanent or whether he will improve as time goes by?

A I think it is permanent.

Q I take it, Doctor, that he is physically able to do other types of work, if he could find some type of work?

A He would be able to do most any kind of light work or work where he is sitting down, providing he didn't have to walk any great distance at all.

Q But as to labor, heavy labor and construction work—

A That is out, in my opinion.

Q He is totally unable to do that?

A Yes, pick and shovel is out.

* * * * * *

Q But the pain does prevent him from engaging in his regular activities?

A In regular hard manual labor, pick and shovel construction work, getting up and down from a caterpillar, and so forth.

* * * * * *

Q What did you base that evaluation on, Doctor?

A I based it on the length of time that it took him to more or less partially recover from his injury and also on his condition at the time I discharged him. He walked with somewhat of a limp. He had some ankylosis of the left foot and ankle; and that would impair him from doing work that he knew only how to do.

* * * * * *

Q In this letter of March 23, 1964, which was referred to by counsel, after the statement that he was discharged with 20 per cent permanent disability of the left foot and ankle, you also made the statement, did you not, Doctor: 'He is still unable to work at his usual occupation'?

A If that is what is in the letter, that is what I said, yes, sir.

Q Now, with respect to this permanent disability, Doctor, is that your opinion that he is 20 per cent disabled from working or just 20 per cent limited in the motion and use of the foot?

A I would say that he is 20 per cent permanently disabled, no matter what he does. As far as his usual occupation goes, he is through with construction work. He is through with getting up and down a bulldozer. He is through with a pick and shovel. It applies to, I would say, his entire body, because now his hip is affected."

 From the testimony it is clear that the claimant is wholly unable to perform the usual tasks of a common laborer which was what he was doing when he was injured, and he is entirely unable to perform any work for which he is qualified. This is true, notwithstanding the doctor's statement that claimant is "20 per cent permanently disabled, no matter what he does." Although this testimony may be accurate "medically," under our statute if he can no longer do the work he was doing when injured, and cannot do the only work for which he is qualified, he is "legally" totally disabled. Compare Reynolds v. Ruidoso Racing Ass'n, Inc., 69 N.M. 248, 365 P.2d 671 (1961). As already noted, there is no testimony to the contrary. As a matter of fact, employer's doctor expressed the opinion that, although he felt claimant could ultimately do the same kind of work he was doing when injured, at the time of his examination and trial claimant could not do so.

 It follows that the court erred in limiting employee's recovery to 20% to the body as a whole. Such limitation lacks support in the proof which requires a holding that claimant was 100% disabled.

The judgment appealed from is reversed and the cause remanded to the district court with instructions to set aside its judgment and enter a new judgment in conformity herewith. It is so ordered.

CHAVEZ, C. J., and COMPTON, J., concur.

NOBLE and CARMODY, JJ., dissenting.

NOBLE, Justice (dissenting).

I agree with Justice CARMODY that there is an absence of substantial medical evidence to support a judgment awarding compensation for any disability extending beyond the specific body member. My disagreement with the majority, however, is more basic. The trial court specifically found that the injury was limited to the workman's left foot and ankle, and that any bodily impairment or disability extending beyond the specific body member resulted solely from the injury to the foot and ankle. Section 59–10–18.4, N.M.S.A. 1953, expressly limits a compensation award for all disability *resulting from* an injury to a specific body member to the amount specified in § 59–10–18.4(a), N.M.S.A. 1953. For my interpretation of the statute, see my dissents in Webb v. Hamilton, 78 N. M. 647, 436 P.2d 507; Baker v. Shufflebarger, 78 N.M. 642, 436 P.2d 502, both filed January 22, 1968; and in Yanez v. Skousen Constr. Co., 78 N.M. 756, 438 P.2d 166, filed this date.

For all of those reasons, I dissent.

CARMODY, Justice (dissenting).

Although I have no desire to belabor the questions here involved, I must express my disagreement with the opinion of the majority.

In both Baker v. Shufflebarger and Webb v. Hamilton, cited by the majority, there was substantial evidence that there was "additional body impairment" justifying a determination that recovery should not be limited to the scheduled-injury section of the statute (§ 59–10–18.4, N.M.S.A.1953, 1967 Pocket Supp.). Here, the majority to the contrary notwithstanding, I do not believe that the evidence is substantial. The majority rely entirely on the testimony of the treating physician, who admittedly had discharged the claimant from any further treatment almost two years before the trial. The discharge was on a basis of 20% permanent disability and the doctor had not treated the patient for any related condition since the time of discharge. As a mat-

ter of fact, he had seen him only once since discharge, and then for a cold. Prior to the discharge of the claimant, the doctor did not even consider "any trouble * * * with his left hip or left buttock. That has developed since then." The doctor further admitted that his disability evaluation was "not based upon any examination."

Without in any sense attempting to weigh the testimony of this professional man, nevertheless, under the facts here, I do not believe that, in all fairness, the testimony can be considered substantial. It is at best a mere scintilla. In my judgment, it is neither sufficient to support finding No. 5, nor can it serve as justification to overturn the trial court's limitation of 20% disability to the body as a whole. In no sense can the testimony be construed to be the kind of expert testimony required to establish the "causal connection as a medical probability" of 100% disability as the natural and direct result of the accident. At the most, it is speculation and contrary to § 59–10–13.3(B), N.M.S.A.1953. See, Ross v. Sayers Well Servicing Co., 1966, 76 N.M. 321, 414 P.2d 679, which, in my opinion, would require that the expert testimony be considered of no value, directly opposite to the result reached by the majority.

What little "breath of life" yet remained in the scheduled-injury section after the decisions in Baker and Webb has now been effectively and conclusively "snuffed out" by the majority opinion. Without weighing the merits or demerits of the existence of a scheduled-injury section of the Workmen's Compensation Law, I cannot accede to what amounts to an effective repeal of the statute by what, to me, is a tortured construction of testimony, which, taken in its proper context, would be of little, if any, probative value. If the statute is to be repealed, it should be done by proper action of the legislature, not by an opinion of the court which gives body and substance to testimony which otherwise would be entitled to little credence.

For these reasons, I respectfully dissent.

**114**

## OPINION ON REHEARING

MOISE, Justice.

The motion for rehearing asserts that the opinion in the case weighs the evidence and reaches a conclusion contrary to the court's findings, and that in doing so we have departed from the role of an appellate court consistently followed by us. Among other cases, principal reliance is placed upon what was said in Thompson v. The Banes Co., Inc., 71 N.M. 154, 376 P.2d 574 (1962); Romero v. H. A. Lott, Inc., 70 N.M. 40, 369 P.2d 777 (1962); and Mathews v. New Mexico Light & Power Co., 46 N.M. 118, 122 P.2d 410 (1942). This contention is totally devoid of merit.

█ Although we did not do so, we could and probably should have quoted the trial court's findings 6 and 7. We do so now:

"6. That because of the general bodily impairment resulting from his said injury, Plaintiff is unable to continue to do the type of work which he had done previously and which is the only type of work for which he is fitted by education, training, experience, general physical condition and mental capacity.

"7. That Plaintiff has never attended school and has worked only as a labor foreman and has otherwise performed only heavy manual and unskilled labor."

Nowhere in its findings did the court suggest that the disability was less than total. In its conclusion 4, the court concluded: "That Plaintiff's injury has rendered him permanently disable [sic] to the extent of 20% of total bodily ability." It is this conclusion that is not supported by the findings and which is corrected by our opinion. This is our function. Whitehurst v. Rainbo Baking Co., 70 N.M. 468, 374 P.2d 849 (1962). In the opinion, we have set forth certain evidence—not to establish a lack of support for the trial court's findings—but to demonstrate that the findings were substantially supported. As stated, there was no conflict. It is conclusion 4, quoted above, which does not follow from the facts as found, and which required a reversal. See Thompson v. H. B. Zachry Co., 75 N.M. 715, 410 P.2d 740 (1966); Star Realty Co. v. Sellers, 73 N.M. 207, 387 P.2d 319 (1963). We see no reason advanced by the motion for rehearing which moves us to in any way modify our holding previously announced. The motion is denied.

█ Counsel for plaintiff-appellant has requested that we fix an amount deemed by us to be reasonable and proper to be paid as attorney fees on appeal, in addition to compensation allowed defendant. Provision for such an allowance is contained in § 59–10–23(D), N.M.S.A. 1953. In accordance therewith, we deem the sum of $1,000.00 to be reasonable and proper, and fix it as the amount to be paid as and for attorney fees on appeal.

It is so ordered.

CHAVEZ, C. J., and COMPTON, J., concur.

NOBLE and CARMODY, JJ., dissenting.