650 P.2d 844

**Joseph L. BUFALINO, Plaintiff-Appellee,**

v.

**SAFEWAY STORES, INC.,
Defendant-Appellant.**

No. 5545.

Court of Appeals of New Mexico.

Aug. 10, 1982.

John B. Tittman, Robert C. Conklin, Keleher & McLeod, P. A., Albuquerque, for defendant-appellant.

James T. Roach, Albuquerque, for plaintiff-appellee.

## OPINION

SUTIN, Judge.

Safeway appeals a judgment in which plaintiff was awarded workmen's compensation benefits for total permanent disability arising out of a heart attack while on the job. We affirm.

As summarized, the court found:

On January 17, 1981, plaintiff, 64 years of age, was employed by Safeway as a meat cutter. While performing very heavy lift work, plaintiff felt a sudden disabling pain in his chest, and due to physical stress, suffered a myocardial infarction resulting

in disability. Prior thereto, plaintiff told his supervisor he was not feeling well but was told to keep working.

Prior to the heart attack, plaintiff had no symptoms of any heart problems. He had an 80% developmental blockage of one of the descending arteries in his heart but it was unknown to himself or to anyone else. He was fully able to perform all the duties of his work. Immediately after his heart attack to the time of trial, plaintiff was unable to perform his work as a meat cutter or any work for which he was fitted and was permanently disabled.

Plaintiff had spent most of his life as a meat cutter and had no skills or training in any other field.

Safeway claims: (1) plaintiff's heart attack was not caused by his work; (2) the heart attack did not permanently damage plaintiff's heart; (3) if plaintiff is disabled, it was due to natural progression of the underlying disease process; (4) plaintiff was not totally disabled; and (5) the trial court abused its discretion in awarding plaintiff $15,000.00 as attorney fees.

A. *Plaintiff's heart attack was caused by his work.*

This point is wholly factual. Safeway contends that plaintiff's myocardial infarction was merely an incident of his pre-existing heart disease (arteriosclerosis or clogging of arteries) and did not arise out of and was not incident to his work; that at the time of the onset he was not doing any heavy or exerting activity but was merely pushing a cart with a few empty cardboard boxes on it. Safeway is mistaken.

Plaintiff testified that at the time he felt the sudden chest pain he was either making "burger" or loading boxes which weighed 80 pounds, both being work of heavy lifting. Plaintiff's physician testified that the lifting stress was the precipitating cause of the heart attack. Under the same factual situation, *Sanchez v. Board of County Commissioners,* 63 N.M. 85, 313 P.2d 1055 (1957), had no difficulty in seeing a compensable accidental injury.

Safeway relies upon the testimony of another meat cutter that plaintiff had pains in his chest while pushing a cart of empty boxes out to the baler. Therefore, the heart attack was merely an incident of his pre-existing heart disease, not his work. Plaintiff's physician testified that if, at the time plaintiff experienced chest pains, he was lifting pasteboard boxes that were empty, it was physical exercise which caused the heart attack, an event that occurs within a fairly reasonable amount of seconds or minutes after the exertion.

In either event, plaintiff's heart attack was caused by his work.

B. *The heart attack permanently damaged plaintiff's heart.*

The trial court found:

24. Plaintiff suffered a permanent damage to his heart as a result of the myocardial infarction of January 17, 1981.

Safeway concedes that:

There is no dispute that as a result of the heart attack some heart tissue died and was replaced by scar tissue. There is no dispute that this is permanent.

This admission, supported by the evidence, established a permanent damage to the heart. Safeway claims that no *significant* permanent damage to plaintiff's heart existed because the heart pumps blood just as well as it did before January 17, 1981. To support this conclusion, Safeway points to the testimony of plaintiff's cardiologist who stated that plaintiff had a very small heart attack and found a very small amount of damage. There was no testimony that the heart pumped blood just as well as it did before January 17, 1981.

What Safeway argues is that permanent damage to plaintiff's heart did not *significantly* impair the function of the heart. This means that the function of the heart was impaired but not in a meaningful way. Safeway relies on the testimony of its cardiologist who stated that stress could not precipitate the heart attack; that part of plaintiff's main pumping station was

damaged but not to the point where it would limit him significantly. Whatever his opinion means, the trial court rejected it. In workmen's compensation cases, opinion testimony is not conclusive. The trier of the facts could accept, reject or give such weight only as it deemed the same entitled to have, even though uncontradicted. *Montano v. Saavedra*, 70 N.M. 332, 373 P.2d 824 (1962).

What is meant by "permanent damage to the heart"? This is an innovation in workmen's compensation cases. In *Alspaugh v. Mountain States Mutual Casualty Co.*, 66 N.M. 126, 343 P.2d 697 (1959), the dissenting opinion of Justice Compton sets forth the testimony of a doctor: that the workman had suffered "permanent damage to the heart" as a result of the first attack and that it was natural that subsequent heart attacks would follow the initial one when the heart muscles had been thus damaged.

■ The line of demarcation between temporary, significant and permanent damage is not susceptible of exact delineation. But practically speaking, permanent damage to the heart is damage that is incurable; that continues or endures without fundamental or marked change, but, coupled with another heart attack can cause heart failure or death. With proper medical guidance, it may delay heart failure but the damage cannot be cured per se. Plaintiff suffered permanent damage to his heart.

■ What is its significance? Workmen's compensation is allowed " * * * (3) when the disability is a natural and direct result of the accident." Section 52–1–28(A)(3), N.M.S.A. 1978. The primary test of disability is the capacity to perform work. *Medina v. Zia Co.*, 88 N.M. 615, 544 P.2d 1180 (Ct.App.1975). "Permanent damage to the heart" is not a "disability" unless it adversely affects a workmen's capacity to work. If it does, then a workman suffers a permanent disability. In other words, "permanent damage to the heart" is a factor to be considered in the determination of "permanent disability." In this respect, "permanent damage to the heart" is significant whether the damage is large or small.

■ In the sensitive area of heart damage, when conflicting and confusing medical testimony is presented, neither the district court nor this Court, unlearned in this field of medicine, will dawdle over the meaning of "significant" permanent damage of the heart, nor over ultra technical positions taken by parties. When Safeway stated to the district judge, its cardiologist recommended plaintiff to return and try to work, the judge responded:

But if he goes back to work and has another attack on the job, he may die.

This was a clear and judicious conclusion reached from the medical testimony. It led the court to believe that a significant permanent damage to plaintiff's heart was present. We agree.

### C. *Plaintiff's disability resulted from his heart attack.*

Safeway claims that if plaintiff is presently disabled, it resulted from the natural progression of the underlying disease process, not from a direct and natural result of lifting heavy boxes. It relies upon § 52–1–28(B) which reads:

In all cases where the defendants deny that an alleged disability is a natural and direct result of the accident, the workman must establish that causal connection as a medical probability by expert medical testimony. No award of compensation shall be based on speculation or on expert testimony that as a medical possibility the causal connection exists.

■ For a workman to recover, he must show that his disability is a natural and direct result of the accident. Section 52–1–28(A)(3). If the employer denies this fact, the workman is required to produce expert medical testimony to show as a medical probability that his disability was caused by the accident. *Anderson v. Mackey*, 93 N.M. 40, 596 P.2d 253 (1979).

■ On the other hand, an award of compensation should be denied (1) if a court must speculate as to whether a workman's disability was caused by the accident; or (2)

if an expert testifies that as a medical possibility the workman's disability was caused by the accident.

■ An "accident" is an unlooked for mishap, or untoward event which is not expected or designed. *Herndon v. Albuquerque Public Schools*, 92 N.M. 635, 593 P.2d 470 (Ct.App.1978). In the instant case, the accident was the stress which occurred in lifting heavy boxes. The question is:

As a medical probability, did the stress in lifting heavy boxes cause plaintiff's disability, or was disability caused by the natural progression of plaintiff's underlying disease process?

■ The rule is established that where conflicting medical testimony is presented as to whether a medical probability of causal connection existed between myocardial infarction and work being performed, the trial court's determination will be affirmed. *Yates v. Matthews*, 71 N.M. 451, 379 P.2d 441 (1963); *Thompson v. Banes Company*, 71 N.M. 154, 376 P.2d 574 (1962); *Montano, supra.*

Plaintiff had an 80% obstruction in the artery to the front of his heart prior to the day of the accident. Defendant's cardiologist testified that stress did not cause his heart attack; that it was caused by the progression of the hardening of plaintiff's arteries. The trial court rejected this opinion.

■ To determine whether plaintiff established the causal connection, it is important to differentiate "speculation," "medical probability" and "medical possibility." Arteriosclerosis is not caused by hard work. But when the stress at work manifests the symptoms such as chest pain, there is a causal connection.

■ "Speculation" is the act of theorizing about a matter in which evidence is not sufficient for certain knowledge. *Le Grand v. U-Drive-It Co.*, 247 S.W.2d 706 (Mo.App. 1952); *Jaramillo v. United States*, 357 F.Supp. 172 (D.N.Y.1973). "Speculation" arises when the probabilities of an event happened in one or two ways and there is no evidence as to which way it did happen.

But "speculation" does not arise when the evidence is sufficient to show *that it is more likely than not that the event occurred as a result of the cause. Fields v. Western Kentucky Gas Company*, 478 S.W.2d 20 (Ky. App.1972).

■ A logical distinction can be made between "medical probability" and "medical possibility" in a workmen's compensation case. *Parker v. Employers Mutual Liability Ins. Co. of Wis.*, 440 S.W.2d 43 (Tex.1969). The court said:

There can be many possible "causes," indeed, an infinite number of circumstances can cause an injury. But a possible cause only becomes "probable" when in the absence of other reasonable causal explanations *it becomes more likely than not that the injury was a result of its action.* [Emphasis added.] [Id. 47.]

Plaintiff's cardiologist was asked this question to which he made this answer:

Q. Are you in a position to state that it is more likely than not that his heart attack is causally related to his work?

A. I would say it's more likely than not that his heart attack was related to his lifting of heavy boxes.

■ Although the specific language of the statute was not used, plaintiff established a causal connection between the accident and the disability as a medical probability by expert medical testimony. *Lyon v. Catron County Commissioners*, 81 N.M. 120, 464 P.2d 410 (Ct.App.1969).

It has also been held that "although the physician uses 'possibility' language in expressing his opinion, it may still amount to 'probability' testimony when it is considered as a whole." *Royal Indemnity Company v. Hume*, 477 S.W.2d 683, 688 (Tex.Civ.App. 1972).

Safeway now turns a leaf in its brief of law and facts. It claims that plaintiff's work actions caused a temporary episode of coronary insufficiency; that plaintiff's present disability is a result of his underlying disease.

566

Safeway relies upon *Riutta v. Mayflower Farms Inc.,* 19 Or.App. 278, 527 P.2d 424 (1974); *Wheeler v. Industrial Commission,* 94 Ariz. 199, 382 P.2d 675 (1963); *Cormier v. Aetna Ins. Co.,* 368 So.2d 461 (La.1979); and *Sellens v. Allen Products Co., Inc.,* 206 Neb. 506, 293 N.W.2d 415 (1980).

*Riutta* is an Oregon case in which the appellate court made a de novo review. We do not. Nevertheless, *Riutta* demonstrates the meaning of a temporary episode. Riutta, the workman, suffered an attack of coronary insufficiency on June 25, 1971. He was hospitalized until July 1, 1971, a period of seven days, and then discharged as symptomless. He was asymptomatic. There was no subjective evidence of disease. Being asympotomatic, Riutta fully recovered from his accidental injury and therefore suffered a temporary attack of myocardial ischemia, a temporary episode of coronary insufficiency. He did not suffer a myocardial infarction. As a result, the progression of his underlying condition was responsible for his disability thereafter.

In the instant case, plaintiff's family doctor testified that plaintiff was asymptomatic prior to the episode of January 17, 1981; that he became symptomatic with the chest pain and that he was becoming more asymptomatic. Plaintiff was not in fact asymptomatic and during his symptomatic period he was permanently disabled from returning to the type of employment which he was engaged in at the time of the chest pain episode.

Defendant's cardiologist testified that plaintiff suffered an acute myocardial infarction, also known as a coronary acute occlusion, a coronary, a heart attack. The trial court found:

17. As a result of the physical stress of his job on January 17, 1981, plaintiff suffered a myocardial infarction.

■ Plaintiff did not suffer a temporary episode of coronary insufficiency. The *Riutta* rule is not applicable.

A discussion of *Wheeler, Cormier* and *Sellens* is unnecessary. These cases in no way affect the result in the instant case. *Cormier* is a Louisiana case. There, the rule is more liberal in favor of the workman. *Bertrand v. Coal Operators Casualty Company,* 253 La. 1115, 221 So.2d 816 (1968), on rehearing, 825 (1969). In cases of this nature, the court presumes that the accident caused the disability. The issue of proof of medical probability is not required. Plaintiff was held to be totally permanently disabled.

In passing, Safeway claims plaintiff's injury-caused disability was temporary; that it terminated 3–4 weeks after his heart attack because plaintiff's cardiologist testified that plaintiff was pretty much back to normal activity. This opinion does not mean that plaintiff was asymptomatic, nor that he could return to his work. The cardiologist was not asked what he meant by an almost return to normal activity, nor will we speculate. When asked what his prognosis was, the cardiologist stated:

I think, in general, his prognosis is good. The natural history of this kind of a problem is that it carries with it a mortality rate of about 2% per year, 2% of the patients with this kind of problem are dead at the end of one year, and 10% at the end of five years. He may, if this gets worse, require surgery to have this lesion, the obstruction by-passed.

This prognosis shows that once symptoms of chest pains develop along with plaintiff's arteriosclerosis, such symptoms can be related to impending death or surgery. Once chest pains develop many such people die within 5 years. Unquestionably, plaintiff cannot exert himself without endangering his life.

D. *Plaintiff was totally disabled.*

■ Safeway produced an expert in vocational rehabilitation who reviewed all medical testimony and concluded that there were similar jobs available that plaintiff could perform. Plaintiff produced a similar expert whose testimony along with that of plaintiff and doctors established that plaintiff was totally disabled and should not return to work. We are bound by the trial court's findings of total disability at the time of trial.

E. *There was no abuse of discretion in the award of attorney fees.*

A separate hearing was held to determine the amount of attorney fees to be awarded plaintiff. Plaintiff's attorney and another reputable attorney testified on behalf of plaintiff. Safeway presented no witnesses. The minimum fee suggested by the attorney called by plaintiff was $15,000.00. The trial court awarded this amount. We cannot say that the trial court acted beyond the bounds of reason. Plaintiff was entitled to additional attorney fees for time spent at the hearing, but none was requested.

Findings of fact and conclusions of law were neither requested nor made as ordered in *Fryar v. Johnsen,* 93 N.M. 485, 601 P.2d 718 (1979). Safeway has no basis for attacking the award. We have held under *Fryar* that a hearing is not required; that "evidentiary support" for fees is necessary. *Lopez v. K. B. Kennedy Engineering Co.,* 95 N.M. 507, 623 P.2d 1021 (Ct.App.1981). In the absence of an "evidentiary hearing," it is reasonable to believe that a fee less than that awarded would have been granted plaintiff.

We can foresee a full blown hearing on attorney fees comparable to a trial. Regardless of the result, a rule must be adopted to govern whether plaintiff is entitled to an additional attorney fee for services rendered. The issue not having been raised, no rule will now be adopted.

Plaintiff is awarded $2,500.00 for services rendered in this appeal. *Herndon v. Albuquerque Public Schools,* 92 N.M. 287, 587 P.2d 434 (1978). Safeway shall pay the costs of this appeal.

Affirmed.

IT IS SO ORDERED.

LOPEZ and NEAL, JJ., concur.