No. 89-530

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

THOMAS TAYLOR,

      Petitioner and Respondent,

  -v-

COLUMBIA FALLS ALUMINUM COMPANY,

              Employer,

  and

NATIONAL UNION FIRE INSURANCE,

      Defendant and Appellant.

APPEAL FROM:    Workers' Compensation Court
               The Honorable Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Bradley J. Luck; Garlington, Lohn & Robinson; Missoula, Montana

      For Respondent:

          John H. Bothe; Bothe & Lauridsen, P.C.; Columbia Falls, Montana

Submitted on Briefs: May 16, 1990

Decided: July 12, 1990

Filed:

Justice R. C. McDonough delivered the Opinion of the Court.

Defendant, National Union Fire Insurance Company (Appellant), appeals the judgment of the Workers' Compensation Court awarding Thomas Taylor 500 weeks of permanent partial disability benefits under § 39-71-703, MCA (1985), at the maximum biweekly compensation rate. We affirm.

The sole issue on appeal is:

Whether the Workers' Compensation Court erred in awarding permanent partial disability benefits to the claimant under § 39-71-703, MCA (1985).

At the time of trial, claimant Thomas Taylor was 44 years old, married, with four children. Mr. Taylor graduated from high school in Livingston, Montana in 1962, and attended part of one year of college at Montana State University. In 1964, Mr. Taylor enlisted in the Marine Corps, where he served until 1968. Following his enlistment, Mr. Taylor began working for the Columbia Falls Aluminum Company. He has worked at the aluminum plant continuously, except for approximately eight months in 1973, when he worked as a skidder operator and on the green chain at a plywood plant.

On June 23, 1987, Mr. Taylor was driving a hot metal truck at the plant when the truck fell sideways and he was injured. As a result of this accident, Mr. Taylor experienced severe headaches and dizziness. He was placed in a neck collar and transported to the emergency room at a local hospital, treated and released. The examining doctor determined that Mr. Taylor had suffered a neck

2

sprain.

The next day Mr. Taylor went to his family doctor, who after initial treatment, referred him to Dr. John V. Stephens for conduction studies. Eventually, Dr. Stephens diagnosed post cervical thoracic sprain/strain, myofascial pain and muscle contraction headaches. As a result of this diagnosis, Mr. Taylor was permanently restricted to medium work, avoiding repetitive work above shoulder level or arms outstretched, avoiding static positioning of the head or continuous twisting of his head or neck.

When he returned to work, Mr. Taylor was initially assigned to a light duty position. After five weeks at this job assignment he returned to the hot metal truck driving position. After three days the symptoms relating to his injury returned and he went back to see Dr. Stephens. Following examination, Dr. Stephens told Mr. Taylor that he could (1) quit work, (2) try to go back to light duty, or (3) bid out of his present job and get into a less strenuous position. He was successful in bidding into a position as a casting laborer, which is far less strenuous than driving the hot metal truck.

Following this job change, Mr. Taylor has not missed any work as a result of his injury, but the change has limited Mr. Taylor's advancement opportunities. Other employees in the casting department have more seniority than Mr. Taylor. This is not the case in other departments where, due to his injury, he is no longer able to work. As a result of this factor and the limited number of jobs in the casting department Mr. Taylor is necessarily limited

3

in advancement.

Following the accident, appellant accepted liability and Mr. Taylor was reimbursed for his medical bills and for the time he was out of work. A dispute arose concerning the extent of his permanent partial disability entitlement. Trial was held and the Hearing Examiner issued his Findings of Fact, Conclusions of Law and Proposed Judgment. The Workers' Compensation Judge issued his order accepting the Hearing Examiner's recommendations. The judgment awarded Mr. Taylor 500 weeks of permanent partial disability benefits under § 39-71-703, MCA (1985), at the maximum biweekly compensation rate. This appeal followed.

Section 39-71-703(1), MCA, as it read before the 1987 amendments controls the outcome of this case. The injury occurred on June 23, 1987, before the effective date of the amendments. See Buckman v. Montana Deaconess Hospital (1986), 224 Mont. 318, 730 P.2d 380. That section provided:

> **39-71-703. Compensation for injuries causing partial disability.** (1) Weekly compensation benefits for injury producing partial disability shall be 66 2/3% of the actual diminution in the worker's earning capacity measured in dollars, subject to a maximum weekly compensation of one-half the state's average weekly wage.

The appellant argues that the language of this statute was intended to compensate the injured worker for actual loss of earning capacity, while § 39-71-705 to 708, MCA, was to compensate injured workers for possible future loss to earning capacity. According to their argument, Mr. Taylor can show no real loss in earning capacity and therefore the decision of the Workers' Compensation Court granting him maximum benefits under § 39-71-

4

703, MCA, is not supported by substantial evidence.

We disagree with this contention. In a recent case, Sedlack v. Bigfork Convalescent Center (1988), 230 Mont. 273, 749 P.2d 1085, we were faced with this same argument. In Sedlack, we fully described the history and policy of cases decided under § 39-71-703, MCA. Therefore, we need not fully address appellants' argument here. However, it does bear repeating that the correct test for loss of earning capacity is whether the industrial accident caused "a loss of ability to earn in the open labor market." Sedlack, 749 P.2d at 1088. Given this standard, we need only review the ruling of the Workers' Compensation Court to determine if it correctly found that Mr. Taylor suffered "an actual loss of earning capacity."

The lower court found that following his return to work, Mr. Taylor earned essentially the same wage as before his injury. However, it also found that his chances for advancement were curtailed due to job restrictions placed upon him as a result of the accident. The court found that Mr. Taylor lost access to a number of jobs outside of the aluminum plant. It based this conclusion upon the testimony of John Addington, a vocational rehabilitation consultant who was retained by the appellant. According to this testimony, Mr. Taylor suffered a loss of labor market access in Flathead County of 38.5%. The court further found that if the aluminum plant were to close, Mr. Taylor's ability to compete for other jobs would be diminished and he would suffer a wage loss.

5

Using this testimony as a basis, the court found that Mr. Taylor was severely limited in his ability to compete for and perform jobs outside of the aluminum plant in the Kalispell area. Most of the jobs that he could perform do not require training and are lower paying jobs. The only transferable skill position which Mr. Taylor could readily perform was identified as sub-assembler, which at entry level pays near minimum wage.

The lower court determined the average wage in occupations now available to Mr. Taylor outside the plant approximated $4.00 per hour. It then determined that Mr. Taylor suffered a wage capacity loss of $6.87 per hour, which was derived by subtracting his post-injury earning capacity of $4.00/hour from his pre-injury wage of $10.87/hour. It then determined that Mr. Taylor was entitled to weekly benefits of $149.50, the maximum recoverable under § 39-71-703, MCA (1985).

The benefits awarded in this case and the findings of fact upon which they are based are supported by substantial evidence. Findings of the Workers' Compensation Court will not be overturned if there is substantial evidence to support them. Steffes v. 93 Leasing Co., Inc. (1978), 177 Mont. 83, 580 P.2d 450.

Furthermore, the lower court did not err in its conclusions of law. The court found that Mr. Taylor, as a result of his accident, suffered "a loss of ability to earn in the open labor market." The open labor market necessarily includes jobs found within the Columbia Falls Aluminum Plant, as well as within the Flathead County area. Based upon this finding, the court concluded

6

that Mr. Taylor incurred an actual diminution in his earning capacity. This conclusion is in accordance with the plain language of § 39-71-703, MCA (1985), and with case law promulgated by this Court. The judgment is therefore affirmed.

_____
                        Justice

We Concur:

_____
        Chief Justice

_____

_____

_____

_____

_____
        Justices

7